WALTER C. ANTHONY, APPELLANT, *v.* HENRY HARRISON, ADMINISTRATOR, AND ELIZA HARRISON, ADMINISTRATRIX, ETC., OF GEORGE HARRISON, DECEASED, RESPONDEN'

*Promissory note — affixing of seal to — effect of — Consideration — when it must be proved by payee.*

This action was brought upon a sealed instrument, by which the defendants' intestate promised at his death to pay Walter C. Anthony five thousand dollars for value received. This note was given however, and the money collected hereon was to be held and used by said Anthony in trust, to pay it over to a beneficiary therein named. Upon the trial it appeared that no consideration for the promise was given either by the payee or beneficiary.

*Held,* that the fact that the note was sealed was only presumptive evidence of a consideration therefor.

That as it appeared that neither the payee nor the beneficiary furnished any consideration for the note, it rested upon the plaintiff to show what, if any, consideration existed, and by whom the same was furnished, and that upon his failure so to do the action was properly decided against him.

Appeal from a judgment in favor of the defendants, entered upon the report of a referee.

This action was brought to recover upon four instruments in writing, bearing date October 25, 1873, made by one George Harrison, each being in substance as follows:

" At my death I promise to pay Walter C. Anthony    *    *    *    * dollars, for value received. The money collected hereon is to be held and used in trust however," etc. The persons named in the instruments for whose benefit the money was to be held in trust, with one exception, were collateral relatives of the maker. The total amount agreed thus to be paid is thirty thousand dollars. Each of the instruments expresses on its face that it was for " value received," and each has a seal affixed to the maker's name. The defense was the want of consideration. The action was referred to Mr. Calvin Frost, as referee, who dismissed the complaint on the ground that the instruments were shown to have been executed and delivered without any consideration.

The following is the opinion of the referee, Mr. Calvin Frost, referred to in the opinion of the court at General Term:

" This action was brought to recover the amount agreed to be paid by four instruments in writing, dated October 25, 1873, made by George Harrison, payable at his death to plaintiff, expressing that they were for " value received," and providing for the holding and using of the moneys collected thereon by plaintiff in trust for the persons mentioned in such instruments respectively, who are all described as collateral relatives of the maker of such instruments, except one of them. The amount thus agreed to be paid is $30,000. Each of said instruments is under seal, but neither purports upon its face to have been intended as such further than by affixing the seal. The large amount involved in this action and the apparent conflict of authority upon the questions to be decided, have led me to make a careful examination of the case and to give my views in writing somewhat at length.

First. What is the character of the instruments upon which this action was brought ?

The defendants claim that inasmuch as there is nothing upon their face to indicate that they were intended to be under seal, they

must be held to be simple contracts; that merely affixing seals to them does not make them specialties.

Independently of authority, I should think that in an action on an instrument, in the body or attestation clause of which there was nothing tending to show that it was intended to be under seal, and which was not of such a character that it was required by law to be sealed in order to be operative for the purpose for which it was evidently intended, and where the right of recovery depended upon its being held to be a specialty, for instance where the statute of limitations was pleaded, evidence should be given to prove the affixing of a seal at the time of the making of the instrument, or at least that it was on the instrument before the six years limitation had expired, or if no statute had been passed in this State changing the rule of the common law as to inquiring into the consideration of sealed instruments, and objections should be made to evidence offered to prove a want of consideration on the ground that the instrument was a specialty, it may well be doubted whether a court should not require proof that the seal was actually attached at the time of signing. But I do not see that a discussion of these points can throw much light on the question now under consideration, for the doctrine of presumptions would largely enter into the decision of them, and can have no reference to the present case, in which the fact that a seal was attached to the notes at the time they were signed was proved, and the defendant relies upon the naked proposition that the instruments although sealed when signed, are not specialties because they do not purport to be so in the body of them.

The cases cited by defendants (4 Munf., 442; 7 Leigh, 305; 1 Wash., 170; 1 Munf., 487; 2 Rand. 446; 15 Grat., 108;) are all Virginia cases and are conceded to hold a doctrine not in harmony with the common law.

The last (15 Grattan), which is latest in point of time (1859), marks the extreme limit to which the courts of that State have gone on this subject, and holds that, when there is nothing in the body of the instrument showing it to have been intended to be under seal, and nothing in its character requiring it to be so in order to accomplish its purpose, but simply a seal appearing affixed to the name of the maker, it is a simple contract, and evidence *aliunde* not

admissible to prove it otherwise. The weight of authority is largely against the Virginia cases, and, if it was not, I should be unwilling to follow them if they led to the result contended for by the defendants. To overturn an instrument as a specialty, when it appeared that the maker affixed his seal at the time of signing, would work far more serious consequences, in my opinion, by defeating the intention of the parties, than could arise from the opposite rule. The following cases establish the character of the instruments in this case as specialties beyond a question: (*Washer* v. *Everhart*, 3 Gill & Johns, 234; *Yarborough* v. *Monday*, 2 Dev., 493; 3 id., 420; *Ingraham* v. *Hall*, 1 Hayw., 193; *Ralph* v. *Gist*, 4 McCord, 267; *Scriggs* v. *Brackin*, 4 Yerger, 528; *Bertrand* v. *Bard*, 4 Pike, 195; *McRaren* v. *McGinn*, 9 Smedes & Marshall, 34; *Taylor* v. *Glaeser*, 2 Serg. & Rawle, 502; *Hubbard* v. *Routh*, 1st Bibb, 492).

The only reported case in this State touching this question which I have been able to find is that of *Merritt* v. *Cornell*, (1st E. D. Smith, 335).

It is an authority for the proposition that, when a note, the body of which contains nothing to indicate whether it was intended to be sealed or not, is sued on, proof of the maker's signature is presumptive evidence that it was also sealed when a seal appears at the end of the maker's name, in a case where an action is commenced before the expiration of the time limited for suits upon simple contracts. It is unnecessary, in order to establish the instruments in this case as specialties, to go to the extent of the doctrine of this case. I cite it rather as part of the learning upon the question, than as authority to be relied on.

Having come to the conclusion that the notes in question are specialties, I proceed to inquire :

Second. Can the want of consideration be shown to defeat them ? It is important at the outset to ascertain the true principle which, at common law, formed the basis of the doctrine that the consideration of a written instrument under seal was not inquirable into. This important attribute of this class of instruments has been supposed by some to rest upon the manner of their execution, and not upon the idea that a seal *imports* a consideration, in other words, that no consideration for a sealed instrument is necessary.

The earliest enunciation of the doctrine with respect to the conclusive character of sealed instruments which I have been able to find is in Plowden, made about two centuries ago, as follows:

"And in an action of debt upon an obligation, the consideration upon which the party made the deed is not to be inquired, for it is sufficient to say that it was his will to make the deed. Thus, although a promise to make a woman an allowance for her maintenance, in consideration of past seduction, is invalid, past seduction being, for reasons given in another place, no consideration in law; yet, inasmuch as an instrument under seal is good without any consideration, a bond for maintenance founded on previous seduction is good."

It is upon this theory that the numberless cases in England, and in many of the States in this country, some of which are cited by plaintiff, holding that a voluntary bond is good, except as against creditors of the obligor, have been decided, although in but few of them have the judges taken the trouble to lay down the reason of the rule, but have contented themselves with citing and following, without discussion, antecedent cases which were founded upon the doctrine laid down in Plowden.

This doctrine is more distinctly announced in *Walker* v. *Walker* (13 Iredell [N. C.] Law R., 335), than elsewhere in any modern case. This was an action on a single bill (sealed) for $40. The trial court charged that, " when the execution of a sealed instrument was proved, the law inferred that it was just and founded upon a just consideration." The Supreme Court on appeal said, " In this there is error. We are not aware of any rule of law by which a consideration is inferred from the fact of the execution of a sealed instrument—no consideration is necessary in order to give validity to a deed. It derives its efficacy from the solemnity of its execution, the acts of sealing and delivery—not upon the idea that the seal imports a consideration, but because it is his solemn act and deed, and is therefore obligatory. No consideration being necessary to give validity to a deed, it follows that the law does not, from the fact of execution, make any inference one way or the other in reference to a consideration."

While in a late case in Pennsylvania (*Candor & Henderson's*

*Appeal,* 27 Penn., 119, cited by plaintiff.) the court in upholding the acts of executors who had paid a voluntary bond of their testator, do not seem to have understood the distinction above discussed —for the opinion says, " it," (the bond) " is under seal, and found expressly to be a voluntary bond. The seal *imports* a consideration, and creates a *legal* obligation. In a voluntary bond no consideration is contracted for or expected. The absence of one is therefore no ground of equitable relief from a contract conceded to be good at law without it."

I think the true rule at common law was and is, that there must be a consideration to support every contract, whether simple or by specialty — that in cases of simple contract the recitals were presumptive evidence of consideration, which might be disproved, while in cases of specialties the seal was *conclusive* evidence of consideration, which could not be disproved.

Independently of direct authority for this position, this rule seems to follow from well settled principles. It is not the instrument, whether sealed or unsealed, which creates the liability. The writing is only evidence of the indebtedness or obligation. It is a fundamental principle that every contract must rest on some consideration. The reason for this, is just as obvious in case of a specialty as in case of a simple contract. There is no higher natural equity in favor of a naked promise, without consideration in one case than in the other. The maxim: " *Ex nudo pacto non oritur actio,*" applies in both cases, as I shall attempt hereafter to show.

In Smith on Contracts (6 Eng. ed.), at page 13, the true doctrine is laid down thus, "A contract by deed requires no consideration to support it, or perhaps it might be more correct to say, as a general proposition, that the law conclusively presumes that it is made upon a good and sufficient consideration."

This conclusiveness arises from the greater solemnity with which an instrument under seal is executed.

" When the agreement is by deed, there is more time for deliberation, for when a man passes a thing by deed, first there is the determination of mind to do it; and upon that he causes it to be written, which is one part of deliberation, and afterwards he puts his seal to it, which is another part of deliberation, and lastly, he

delivers the writing as his deed, which is the consummation of his resolution; so that there is great deliberation used in the making of the deeds, for which reason they are received as a *lien* final to the party, without examining upon what cause or consideration they were made." (Plowden, 308.)

"And indeed it can only be the same principle which makes reasonable an ancient and well established distinction in the common law, by virtue whereof a contract *under seal* is in general valid, without reference to the consideration, not by way of exception to the rule that no promise can be enforced which was not made for a consideration, but because as it is said the seal implies a consideration." (1 Parsons on Cont. [2d ed.], 354; Story on Cont., § 427.)

The conclusiveness of the seal at common law and its implying a consideration, is fully recognized as the ground for upholding a voluntary bond in many of the States.

Thus in *Page* v. *Trufant and others* (2 Mass. R., at page 161), SEDGWICK, J., says: "Every bond, from the solemnity of the instrument, carries with it an internal evidence of a good consideration and is to be supported in a court of law, except facts are disclosed to the court whereby the consideration appears to be immoral, illegal, or against the policy of the law." And at page 162, PARSONS, Ch. J., says: "A bond, from the solemnity of its execution, imports a consideration the want of which the obligor is estopped by law to plead."

"In contracts under seal, a consideration is necessarily implied in the solemnity of the instrument; and fraud in relation to the consideration is held to be no defense at law." (2 Kent's Com., [8th ed.], 593-4.) "It is not to be understood that a voluntary bond would be enforced, if it be admitted by the obligee, by pleading or otherwise, that it was executed without any consideration. The principle is that the bond, from the solemnity of the instrument, *implies a consideration*, and the defendant is estopped by the seal from averring a want of it." (*Id.*, *note A*.)

These authorities, (although numerous others might be cited to the same effect,) are deemed fully to establish the proposition that a consideration is at common law equally necessary to sustain an instrument under seal as in cases of simple contract, but that in

the former the consideration is *conclusively* implied, and in the latter *presumptively*.

I have stated above that there was no higher natural equity in favor of a naked promise without consideration, when evidenced by a sealed than by an unsealed instrument. This proposition is well established by the uniform rule of courts of equity, not to lend their aid to a volunteer seeking to enforce an executory contract. If a bond or other obligation under seal was valid and binding, independent of any actual consideration — if the language of the cases cited by the plaintiff, and many others which I have examined, to the effect that " A voluntary bond is good." " No consideration is necessary to support a sealed instrument when the rights of creditors do not intervene," and the like, had any meaning other than that a seal imported a consideration for the instrument, which from the solemnity of its execution, courts of law would not permit the obligor to deny, courts of equity would have been ever ready to enforce such instruments, when courts of law were inadequate for the purpose, but this the former courts have uniformly refused to do upon the very ground that the instruments were *voluntary*, when the direct question has been presented.

Thus, " It has been recently declared that the court will not execute a voluntary contract. and that the principle of the court to withhold its assistance from a volunteer, applies equally, whether he seeks to have the benefit of a contract, a covenant, or a settlement." (1st Story's Eq., § 433.)

In respect to voluntary contracts *inter vivos* it is a general principle that courts of equity will not interfere; but will leave the parties where the law finds them. In respect also to gifts and assignments *inter vivos*, courts of equity will enforce them only when the gift or assignment is perfected or complete, so that nothing further remains to consummate the title of the donee." (Id., § 706, a.)

In respect to voluntary conveyances, or such as are not founded on a valuable consideration, we have already had occasion to state that courts of equity do not interfere to enforce them, either as against the party himself, or as against other volunteers claiming under him. Thus, for example, if a party should enter into a

voluntary agreement to transfer stock to another, or to give him a sum of money, or to convey to him certain real estate, courts of equity would not assist in enforcing the agreement either as against the party entering into the agreement or against his personal representatives; for he is a mere volunteer." (Id., § 793, a.)

The cases of *Ellison* v. *Ellison* (6 Vesey, 661), and *Jefferys* v. *Jefferys* (1st Craig & Phillips, 137), in England, and the numerous cases therein cited; *Buford's Heirs* v. *McKee*, (1st Dana [Ky.], 107), and the cases of *Hayes* v. *Kershow* (1 Sand. Ch. R., 258); *Duvall* v. *Wilson* (9 Barb., 487), in this State, hold the same doctrine. Covenants and simple contracts are placed on the same footing, and when *executory*, are denied the aid of Courts of Equity.

The result of all these authorities is to establish beyond question that at common law, both specialties and simple contracts must have a consideration to support them, and that a seal was in an action at law held to be conclusive evidence of such consideration.

The enforcement of this inflexible rule of the common law led to many embarrassments in the courts — in many instances causing circuity of action, and often resulting in a failure of justice.

In some states — for instance in Pennsylvania — in the early history of the Commonwealth, the courts departed from this rule and held that, as there was no Court of Chancery in the State, want or failure of consideration might be proved as a defense to an action at law on a sealed instrument, in order to prevent a failure of justice. (*Swift* v. *Hawkins*, 1 Dal., 17; *Steinhauer* v. *Witman*, 1st Serg. & Rawle, 43.)

In the State of New York the difficulty was met and removed by statute in 1830 (3 R. S. [5th Ed.], 691, § 109), as follows: "In every action upon a sealed instrument, and where a set off is founded upon any sealed instrument, the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner, and to the same extent, as if such instrument were not sealed."

Having in view the precise difficulty which existed and which this statute was passed to remedy, there does not seem to be a

question as to its construction. I think that it was designed to strike out the word "conclusive" and insert in its stead the word "presumptive" in the rule of the common law. If anything more is necessary to confirm the views above expressed, as to the true theory upon which the doctrine of the conclusive character of sealed instruments rested at common law, it is furnished by the legislative declaration of such theory, implied by the language of the statute itself, by which a seal is treated as evidence of consideration. By the uniform course of decision in cases arising under this statute the most liberal construction has been given to it, and I have not found a single case in which a limited one has been put upon it. Indeed I believe every defense of want or failure of consideration pleaded to a sealed instrument, upon which an action has been brought or defended, has been upheld by the courts, so far as the cases have been reported.

In the very first case to be found in the books after the enactment of this statute, in which failure of consideration was pleaded to a sealed note, the defence was demurred to, but held good, the court saying, after quoting the statute: "In this respect there is now no distinction between a note with a seal or without one." (*Case* v. *Boughton*, 11 Wend., 109.) Such has been the language, substantially, of all the numerous cases which have followed. (*Johnson* v. *Miln*, 14 Wend., 199; *Tallmadge* v. *Wallis*, 25 id., 13; *Craver* v. *Wilson*, 14 Abb. Pr. R. [N. S.], 374; *Wilson* v. *Baptist Education Society*, 10 Barb., 312; *Morgan* v. *Smith*, 7 Hun, 247; *Home Ins. Co.* v. *Watson*, 59 N. Y., 395; *Burrell* v. *Root*, 40 id., 497; *Torry* v. *Black*, 58 id., 190; *Adams* v. *Hull*, 2 Denio, 312; *McCurtie* v. *Stevens*, 13 Wend., 529; *Russell* v. *Rogers*, 15 id., 359; *Mann* v. *Eckford's Executors*, 15 id., 502; *Fay* v. *Richards*, 21 id., 626; *Van Epps* v. *Harrison*, 5 Hill, 63; *Calkins* v. *Long*, 22 Barb., 99.)

The only one of these cases in which the plaintiff claims to have found any expression favorable to his views is that of *Mann* v. *Eckford's Executors* (15 Wend., 501). I have examined that case with care, for I should have been greatly astonished to find that the Supreme Court had decided that in an action upon a sealed instrument, made after the passsage of the statute, want of consideration could not be shown. A few words of explanation,

will suffice to make it clear that the case does not aid the plaintiff. In the first place, the bond upon which the action was brought was made before the passage of the statute under consideration, and the effort of the learned judge who delivered the opinion of the court was chiefly directed towards showing that it could not have a retroactive effect, without coming in conflict with the constitution of the United States, by impairing the obligation of contracts.

In the second place, the judge at the Circuit had ruled that the defendant might prove want of consideration in the instrument upon which the action was brought, and inasmuch as the verdict was in favor of the plaintiff, who did not and could not complain (a motion for a new trial being made by the defendant), this question was not before the court, and the remarks of Judge BRONSON must be regarded as *obiter*. Indeed, he says at page 521, that, while he thinks the judge below erred in deciding that want of consideration might have been proved, it was *an error of which the plaintiff only could complain*. And, at the close of his remarks, upon which the plaintiff relies, near the end of his opinion, at page 521, he said that "it is unnecessary to decide that point in this case."

If further evidence was required to show that Judge BRONSON did not intend to hold any such doctrine as is claimed for his opinion in this case by the plaintiff, it may be found in his opinion in the case of *Van Epps* v. *Harrison* (5 Hill, 63), where, at p. 66, in passing upon the effect of this statute, he says: "The next question is whether this defense can be set up in an action on a sealed instrument, when the evidence does not go to the whole consideration." And after quoting the statute, proceeds: "The language is broad enough to include a case of partial as well as total want or failure of consideration, and I see no good reason why the defendant should not be allowed to recoupe damages upon a sealed as upon an unsealed instrument. If the point has not been directly adjudged, it has often been assumed that the statute had placed both classes of contracts on the same footing, and that in one case as well as the other the defendant might attack" the "consideration, either in whole or in part,"—referring to the cases in 11th, 14th and 25 Wend., but making no allusion to the case in 15 Wend.

I have been referred by the plaintiff to several cases in the courts of Kentucky, where a statute authorizing the defense of want or failure of consideration to be set up as a defense to a sealed instrument was enacted about the year 1800, to show that a construction of the statute of that State had been given inconsistent with the defense set up in this action. As these cases bear upon the construction of a statute similar to our own, they will be briefly noticed.

*Thompson* v. *Buckannan* ( 2 J. J. Marshall, 420), was an action on a bond for the support of an illegitimate child of the obligor given to a guardian. There was a plea denying that there was any consideration. The court held, that inasmuch as the statute authorized specialties to be impeached only so far as writings without seal, might have been impeached at common law, and that a writing without seal acknowledging a consideration could not, at common law, be impeached by parol testimony that there was no consideration, or one different from the one expressed, unless fraud or mistake was alleged and proved, hence the plea was not good. The case does not help the plaintiff in the least, but is rather an authority against him, as it proceeds upon the theory that both kinds of contract under the statute stand on the same footing.

*Allen* v. *Lucket* (3 J. J. Marshall, 164), was an action on a bond given on granting an injunction. Plea denying injunction, etc. The court held precisely the same doctrine as in above case in 2 J. J. Marshall.

In *Wibble* v. *Oldham* (5 J. J. Marshall, 144), no reference is made to the statute.

I think it impossible to resist the conclusion that, so far as relates to the consideration of sealed instruments, they are placed by our statute on the same footing as written instruments not under seal. The plaintiff, if he can succeed at all, must then stand on the proposition that, when a written instrument, promising to pay money, recites a consideration, the want of consideration cannot be shown.

The numerous cases cited on his points upon this branch of the case, if they have any bearing on it, tend to show that if a written instrument recites a consideration, such recital cannot be contra-

dicted. Do they establish such a proposition? A brief analysis of them will clearly show that they do not.

*Kuhn* v. *Stevens*, 36 How. 275. Action for breach of a sealed contract to deliver 7,000 cords of wood — defense that before breach of the contract a subsequent parol agreement was made that all of the wood lying on a certain farm should be delivered, and that the agreement should be cancelled as to the balance and the party bound be discharged from his obligation to deliver it — held that *until after breach* subsequent, parol agreement could not modify and discharge the contract under seal.

*Clough* v. *Murray*, 3 Robt., 7. This case involved the question as to the acceptance of an agreement not under seal, in discharge of a prior agreement under seal, and has no reference to the question under consideration.

*McCrea* v. *Purmort*, 16 Wend. 460. This case is cited as authority for the decisions in all or nearly all of the cases relied on by plaintiff on the particular question now under consideration, and seems to be relied on largely by plaintiff in this case. I will examine it therefore with some particularity. A bill in Chancery was filed, the particulars of which it is unnecessary to detail or refer to, further than to say that the chancellor received parol evidence to show that the consideration of a deed dated about the year 1819, delivered and acted under, which was in it recited to be $6,100, in hand paid, was not *money* but *iron* of a certain quantity, and estimated at a certain value (p. 465). COWEN, J., delivered the opinion of the Court of Errors, and admitted that there was a conflict of authority upon the point greater than he had supposed (p. 465).

The plaintiff is greatly mistaken in supposing that this case defined the effect of the *statute* upon the rule of estoppel. Neither in the opinion of the Court of Errors, nor in the brief of counsel, nor in the opinion of the chancellor, in 5 Paige, 620, where the case was first reported, is any reference made to this statute. The deed was executed long prior to its passage, which it was not claimed even by counsel could affect the case.

The only question discussed upon this point, or which was involved in the case, was whether a different consideration from that expressed in the deed, could properly be proved by parol,

and the effort of Judge COWEN was directed solely to this question. He established the doctrine beyond a doubt, that upon common law principles and upon the authority of cases decided in this and other States and in England, long before the statute was passed, the consideration expressed in a deed might be disproved and another and different consideration shown. No question under the facts stated could possibly have been before the court, as to the rule with respect to proof of want or failure of consideration in *executory* agreements — so that whatever expressions were made by the learned judge as to cases in which want of consideration could *not* be shown, or the effect of such proof in cases different from that before the court were merely *obiter*. But the expressions quoted by plaintiff from the opinion, when read in connection with the facts of that case, throw no light whatever upon the question which I am considering. There was no question before the court whether proving another or different consideration would affect the validity of the deed.

In *Commercial Bank of Lake Erie* v. *Norton*, (1 Hill, 501), the action was on an acceptance of a bill of exchange. The case does not show that any objection was made at the trial to the proof of want of consideration. The only question made upon this branch of the case was as to whether there was proof enough to sufficiently negative the presumption of consideration. The court held that there was not. It did not appear even that the bill contained the words, " value received."

The remarks of Judge COWEN, in his opinion at page 509, on this point, are entirely *obiter*, and besides a reference to the cases, which he cites, will show that no such doctrine as he quotes them to sustain, is even hinted at. For instance, he says that in the case of *Ridout* v. *Bristow*, in Exchequer R. (1 Cromp & Jervis, 231), it was held that the words " value received " could not be met and overcome by parol. The case referred to does not so decide, but the contrary is assumed throughout by counsel and court. No question did or could arise, under the facts stated in that case, whether it was competent to show want of consideration for a promissory note, reciting that it was for " value received." The action was to recover on a promissory note made by a widow, reciting " for value received by my late husband." The plaintiff

himself gave evidence to show consideration, by proving that the testator of plaintiff incurred liabilities for his son (the husband of defendant). The defendant proved that plaintiff's testator admitted that his son died worse than nothing, for he owed him several hundred pounds. The evidence was left to the jury, and there was a verdict for the plaintiff. No objection to testimony was made. Neither counsel raised the point that want of consideration for a promissory note could not be shown, and no such proposition was stated in either of the opinions of the court. Indeed, BAILEY, B., said (p. 235): "You may prove failure, or want, or illegality of consideration, but I am not aware of any case in which a party has been allowed to prove a difference of consideration. But it is not necessary to decide that point in this case, because, upon the evidence, it appeared that various sums had been paid, which the evidence for the defendant, if admissible, did not disprove."

The case of *Woodbridge* v. *Spooner* (3 Barn. & Ald., 233), cited by Judge COWEN, is equally far from sustaining the proposition in favor of which it is quoted, and could never have been examined by the judge, or it would not have been cited by him. The question was whether parol proof was competent to show that it was agreed at the time of making a note, payable on demand, that it should not be payable until after the death of the maker. This is the entire head note of the case, and a careful reading of the case shows that this was the real point determined. The note purported to be "for value received and kindness to me." ABBOTT, Ch. J., before whom the cause was tried, said: "There is no doubt that a proper and sufficient consideration existed for this note, and the evidence does not negative that part of the case. But its object was to show that a promissory note which in terms appeared to have been payable on demand was agreed not to be payable until after the decease of the maker."

HOLROYD, J., said: "This evidence was adduced not to show a want of consideration, or that the consideration for the note was illegal, or that it was not delivered to the party, to be made use of for his own benefit. The utmost extent to which it could go was an attempt to prove that the note was not payable, as on the face of it, it imported to be."

*Averill* v. *Loucks* (6 Barb., 19). This was a motion to compel

the owner of a judgment entered on a bond and warrant of attorney to enter a satisfaction, etc.   Affidavits were offered to show that the bond and warrant of attorney, although absolute on their face, were in fact given to secure the person to whom they were given for past and future indorsements.   The court held that parol evidence was admissible for such purpose, and in the course of the opinion, PAIGE, J., made the remark quoted in the plaintiff's points, with reference to the decision in *McCrea* v. *Purmort* (16 Wend., 460).   It was no part of the object or duty of the court in making this decision to inquire as to what cases would *not* come within the rule allowing parol evidence to vary or contradict the consideration clause in a written instrument, only as to those which *would*, and it was enough to answer the purposes of that case that previous decisions warranted the introduction of parol proof to prove the object of the bond and warrant of attorney, and the remarks quoted were incidental and had no direct bearing on the case.

*Rosboro* v. *Peck*, (48 Barb., 92).   The same remarks which I have made with reference to the last case will apply to this.

*Delamater* v. *Bush*, (63 Barb., 168).   The action was brought upon a *covenant* to pay $450 for rent of stone quarry.   The report of the facts is extremely meagre, the opinion simply stating that " Evidence was admitted against objection and exception, that the sum to be paid was $250, and not $450, as mentioned in the agreement, and the court say, " While in deeds and other instruments, you may for certain purposes, prove the consideration to be different from that expressed, it is not admissible to contradict an agreement or covenant to pay a certain sum."   That this case does not come within the principles applicable to cases of want or failure of consideration, is evident from the brief statement of facts, and also that it was not so understood is evident from the further statement in the opinion.   " So, too, that previous oral negotiations are merged in the writing, is a reason why such proof should not be admitted."

*Barker* v. *Bradley*, (42 N. Y., 316).   The same remarks apply as to the above cases of *Averill* v. *Loucks*, and *Rosboro* v. *Peck*.

*Cocks* v. *Baker*, (49 N. Y., 107).   The referee admitted parol evidence offered on behalf of defendant to prove a different con-

sideration from that mentioned in the recitals in the bond, but nevertheless reported in favor of the plaintiff, and the Court of Appeals said in the opinion at p. 110, " The defendants were allowed to give in evidence all that passed between the parties on that subject, and it was clearly insufficient to prove that the bond was given upon any other or different consideration than that expressed in the recital." It is therefore apparent that the question as to the admission of parol evidence to prove a different consideration from that recited in the bond, was not before the court for review. In the next place, as the precise character of the parol evidence offered in this respect is not stated, I infer from the cases referred to by Judge ALLEN, as authority, (*Renard* v. *Sampson*, 2 Kern., 561, and *Halliday* v. *Hart*, 30 N. Y., 474,) that the question raised was as to the merging of prior parol agreements and negotiations in the written agreement or bond. It is clear that the court did not intend to lay down any rule of law affecting proof of want or failure of consideration of written instruments.

*Bucklin* v. *Bucklin* (1 Keyes, 141). This was an action to foreclose a mortgage made to a trustee for the benefit of plaintiff, then an infant— it was held to be a voluntary *executed* gift — no proof was offered or attempted, so far as the case shows, to show anything with reference to the *pecuniary* consideration of one dollar mentioned in the mortgage, as to whether it had or had not been paid. The court held that " though nominal, it is as adequate to waive " (" raise," probably,) a use as though it were the full value of the land." And the remark with reference to it which follows, (p. 146,) and which plaintiff has cited on his brief, " and although it may not have been paid, the defendant is estopped by his deed from denying its payment," was entirely unnecessary — not applicable to any facts in the case or points raised.

The only remaining case to which I shall refer is that of *Isenhart* v. *Brown*, (2 Edwards Ch., p. 341). The broad doctrine is laid down in this case that voluntary bonds given by the testator will be operative against the estate and preferred to legacies. In the first place, the bonds in question in that case were given in the year 1820, and being before the statute, could not probably have been affected by it. In the second place, no question upon

this statute was made — no discussion of the right to inquire into the consideration of the bonds. In the third place, it is evident that the bonds were contested mainly, if not entirely, on the ground of incapacity of the testator and fraud and improper influence in obtaining them. It does not appear that the point was raised by counsel that the bonds being voluntary were not good. The vice chancellor assumes that they were, without discussion upon this point, referring to two or three of the older English cases.

Having thus examined all the cases in this State, cited by plaintiff, (and if I am right in my construction of them), found none in which it has been held that in an action upon an *executory* contract under seal made since the enactment of the statute in question, want of consideration cannot be proved, the only remaining proposition which remains to be stated is, that consideration of a promissory note is presumed, whether a valuable consideration is or is not expressed on the note. (Chitty on Bills [9 Am. ed.], 78; Story on Promissory Notes, § 51.)

That such want of consideration may be proved, whether the note contains the words " value received " or not. (Story on Promissory Notes; Chitty on Bills, p. 70; *Holliday* v. *Atkinson*, 5 Barn. & Cress., 501; *Hill* v. *Buckminster*, 5 Pick. [Mass.], 390; *Foster* v. *Jolly*, 1 Crompton, Meeson & Roscoe [Exchq. R.], 703; *Abbott* v. *Hendricks*, 1 Manning & Granger, 791; *Sawyer* v. *Chambers*, 44 Barb., 42; *Bookstaver* v. *Jayne*, 60 N. Y., 146.)

Third. I will consider briefly the proposition of plaintiff that the notes in question can be upheld on the ground that the promise of the trustee to accept and execute the trusts contained in them, was a good consideration for the promise to pay the money contained in them.

1. There is no promise on the part of the trustee mentioned in the notes, or any of them, to accept the trusts.

2. If there had been it would not have aided the plaintiff. I have not been referred to any authority, and I do not know of any, or of any principle upon which it can be claimed that a voluntary promise to pay money to one person for the benefit or use of another, is of any different character than that of a promise to pay made directly to such person. It is unnecessary to cite authorities at length to disprove this proposition, as none have

been cited to sustain it.    I will only refer to the case of *Colyear* v. *The Countess of Mulgrave*, (2 Keese [Eng. Ch. R.], 82); *Stewart* v. *The Trustees of Hamilton College*, (2 Denio, 403); *Trustees, etc.*, v. *Stewart*, (1 Comst., 581).

In conclusion, I intend to decide these distinct legal propositions:

1st. That the instruments in question are specialties.

2d. That a consideration is equally necessary to support a sealed as an unsealed instrument.

3d. That at common law a seal imported a consideration, which was conclusive in an action at law.

4th. That the want of consideration might, at common law, be shown to defeat a recovery on all executory instruments not under seal, whatever might be the recitals contained therein.

5th. That sealed executory instruments, under the statutes of this State, are placed in this respect on the same footing as those not under seal, and that want or failure of consideration may be shown in all cases in the former as well as in the latter class of instruments, in the same manner, to the same extent, and with like effect.

CALVIN FROST, *Referee*.

*E. A. Brewster*, for the appellant.    A consideration was affirmatively shown in the trustees' promise to accept and execute these trusts.    (*Briggs* v. *Tillotson*, 8 John., 304; 46 N. Y., 460; *Houghtaling* v. *Randen*, 25 Barb., 21; *Stewart* v. *The Trustees, &c.*, 2 Denio, 410; *Chitty on Contracts*, page 31.)    Even if there was no consideration, and if that fact had been proved, these instruments would still be valid, as *voluntary* bonds, (Toller on Executors, Index " Bonds, Voluntary "; Williams on Executors, Index " Bonds, Voluntary "; *Isenhart* v. *Brown*, 2 Edwards' Chan., 341; Redfield on Surrogate's Courts, p. 286; McClellan's Probate Practice, pp. 246–7; *Walker* v. *Walker*, 8 Iredell's Law Rep., 336; 1 Dessau, 332; 27 Penn., 119; *Sherk* v. *Endress*, 3 Watts & S., 256). A bond is in itself a gift, in law, of the money.    (Harder, 200–1; 1 Equity Cases, Abridged, 84; Gilbert's Equity Rep., 154; 3 Bur., 1639; 7 Term Rep., 471; Comyn's Dig. Fait B., 4, b. note c.; *Nottbeck* v. *Wilks*, 4 Abb. Prac., 318; *Mann* v. *Eckford's Execu-*

*tors*, 15 Wend., 521; *Mack's Appeal*, 68, Penn., 231). A party is estopped from denying the consideration of a contract under seal, which expresses a consideration. (*Commercial Bank* v. *Norton*, 1 Hill, 509; *Averill* v. *Loucks*, 6 Barb., 19; *Rosboro* v. *Peck*, 48 id., 92–95; *Delamater* v. *Bush*, 63 id., 168; *Barker* v. *Bradley*, 42 N. Y., 316, 320; *Cocks* v. *Barker*, 49 N. Y., 110; *Bucklin* v. *Bucklin*, 1 Keyes, 146). This distinction is also illustrated by the decisions as to *sealed receipts*. (In England, see Smith on Contracts, § 16; in Maryland, see *State ex rel. Barnard* v. *Gott*, 44 Md., 341; in Delaware, see *State* v. *Meesick*, 1 Hous., 347, and in Illinois, see *Ill. Cent. R. R.* v. *Welsh*, 52 Ill., 183; *Tribble* v. *Oldham*, 5 J. J. Marshall, 144; *Allen* v. *Luckett*, 3 id., 166; *Thompson* v. *Buckannon*, 2 id., 420; *Guard* v. *Bradley*, 7 Ind., 600; *Swift* v. *Hawkins*, 1 Dal., 17; *Steinhauer* v. *Whitman, Admnstr., &c.*, 1 Sarg. & R., 443; *Hopkins* v. *The R. R. Co.*, 3 Watts & S., 410; *Purkholder* v. *Plank*, 69 Penn., 225). In *Newell* v. *Newell*, 34 Miss., 385, the statement under seal that the subject of a gift had been delivered, was held to estop the donor from denying such delivery. In *Nutting* v. *Hurbert*, 35 N. H., 264, it was held in an action on the covenants in a deed, that want of consideration would not entirely defeat a recovery.

*Cassedy & Brown*, for the respondents.

GILBERT, J.:

The referee has discussed the questions presented in this case with so much learning and ability, that a brief expression of our own views will suffice. 1. No cause of action arises from a bare agreement, with or without seal. A consideration of some sort is necessary to the forming of a contract. 2. The instruments sued on are promissory notes (1 R. S., 768, § 1). The affixing the seals to them did not alter their legal effect. If no seals had been affixed to them, they would have imported a consideration, and evidence of a want of consideration would have been just as essential to preclude a recovery upon them, as it is to defeat this action (2 Kent. Com., 584). 3. At common law there was a conclusive presumption that all contracts under seal, whether in the form of promissory notes or otherwise, were made upon a good and suffi-

cient consideration; but that rule has been abrogated by the Revised Statutes, which provide that "in every action upon a sealed instrument, etc., the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner, and to the same extent, as if such instrument were not sealed." (2 R. S., 406, § 77.) This language is too plain for dispute as to its meaning. Accordingly it has been uniformly held that the effect of that statute was to obliterate the former distinction on the point here involved, between a note with, and one without a seal. (*Case* v. *Boughton*, 11 Wend., 109; *Johnson* v. *Miln*, 14 id., 199; *Tallmadge* v. *Wallis*, 25 id., 113; *Craver* v. *Wilson*, 14 Abb. [N. S.], 374; *Home Ins. Co.* v. *Watson*, 59 N. Y., 395.) 4. The evidence showed very satisfactorily that there was a total want of consideration for the notes. They purported on their face to have been given, not as evidence of any debt due to the payee, but for the purpose of enabling the payee to collect the amount thereof after the death of the maker, for the benefit of other persons named therein. The payee is the plaintiff; and he testified that he gave no consideration, and that he had no knowledge of any consideration having been given for the notes. Like testimony was given by the beneficiaries named in the notes. Surely that testimony was sufficient to rebut the presumption of consideration, and to shift upon the plaintiff the burden of proving a consideration. The plaintiff asserts that the notes were given upon a valuable consideration, and proves the allegation by a legal presumption. The defendant asserts that the notes were given without consideration, and proves that the plaintiff gave nothing for them. According to the natural and usual course of business, if any consideration was given for the notes, it must have proceeded from the plaintiff. But it may have proceeded from some one else, and if it did, the plaintiff, and not the defendant must be presumed to know from whom it did proceed. In *Rex* v. *Turner* (5 Maule & Sel., 206–211), BAYLEY, J., remarked: "I have always understood it to be a general rule that if a negative averment be made by one party which is peculiarly within the knowledge of the other, the party within whose knowledge it lies, and who asserts the affirmative, is to prove it, and not he who avers the negative." And in *Elkin* v. *Jansen* (13 M. & W.,

655–662), ALDERSON, B., on these remarks being quoted, said: "they are right as to the weight of the evidence, but there should be some evidence to start it, in order to cast the onus on the other side." The fact that no person gave consideration for the notes, is not one that is susceptible of direct proof. If proved at all, it must be by means of circumstances or admissions, from which the fact is a necessary or reasonable inference. To reject such proof would put on the defendants the burden of proving an impossible negative. In *Sawyer* v. *Warner* (15 Barb., 285), this court held that a defendant may overcome a presumption arising from the plaintiff's proof by proving facts inducing a contrary presumption. (See, also, 1 Gr. Ev., § 79.) Such a rule is in accordance with general principles of frequent application in civil and criminal cases, and, in many instances, has been found to be indispensable to the attainment of justice. We think it should be applied in this case.

The result is that it became a question of fact for the referee to decide, whether the notes were given with or without consideration. We think that he correctly decided it in favor of the defendants.

The judgment is, therefore, affirmed with costs.

BARNARD, P. J., and DYKMAN, J., concurred.

Judgment affirmed with costs.